IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ARTHUR STANTON, on behalf of himself and others similarly situated, | |
| Plaintiff, | CIVIL ACTION FILE NO: |
| v. | |
| THE NCR PENSION PLAN; THE PENSION AND BENEFITS COMMITTEE OF THE NCR PENSION PLAN; NCR, as Plan Administrator; and ANDREA LEDFORD, LINDA FAYNE LEVINSON, EDWARD P. BOYKIN, GARY J. DAICHENDT, CHINH E. CHU, and RICHARD T. MCGUIRE, | CLASS ACTION COMPLAINT |
| Defendants. | |

# COMPLAINT

## INTRODUCTION

1.      Plaintiff ARTHUR STANTON ("Mr. Stanton"), a former employee of

NCR Corporation ("NCR") and participant in the NCR Pension Plan (the "Plan"), brings

this action pursuant to the Employee Retirement Income Security Act of 1974

("ERISA") to obtain pension benefits and equitable relief on behalf of himself and on

behalf of all other similarly situated participants in the Plan, including participants whose

pension plans merged into the Plan.

## JURISDICTION AND VENUE

2.     Jurisdiction is based on Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1); and 28 U.S.C. § 1331(a), because this action arises under the laws of the United States, namely ERISA.

3.     Relief is authorized by 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and by ERISA Sections 502(a)(1)(B) and 502(a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3).

4.     Venue is proper in this District pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), because Plaintiff resides in this District, the breach took place in this District, and Defendants can be found in this District.

## THE PARTIES

5.     Mr. Stanton is a participant in the Plan within the meaning of ERISA Section 3(7), 29 U.S.C. § 1002(7).  He resides in this District in Cumming, Georgia.

6.     The Plan is an employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2)(A), a "single employer plan" within the meaning of 29 U.S.C. § 1002(41), and a "defined benefit plan" within the meaning of 29 U.S.C. § 1002(35). The Plan's principal place of business is located at 3097 Satellite Blvd., Duluth Georgia 30096.

7.     Defendant the Pension and Benefits Committee of the Plan ("the "Committee") is the "Administrator" of the Plan, a named fiduciary of the Plan, and a *de facto* fiduciary within the meaning of ERISA.   The Committee's offices are currently located in this District in Duluth, Georgia.

8.     NCR, formerly known as The National Cash Register Company ("NCR" or the "Company"), sponsors and maintains the Plan for the benefit of its eligible employees as well as eligible employees of those companies which merged into NCR, including but not limited to the Retirement Plan for Exempt Employees of the Los Angeles Business Forms and Supply Division of the Company.  NCR is the "Administrator" of the Plan and a Plan "fiduciary" within the meaning of ERISA.

9.     Defendant Andrea Ledford, Senior Vice President, Corporate Services and Chief Human Resources Officer of NCR, appoints the members of the Committee and, in doing so, is a fiduciary of the Plan within the meaning of ERISA.

10.  Defendants Linda Fayne Levinson, Edward P. Boykin, Gary J. Daichendt, Chinh E. Chu, and Richard T. McGuire, upon information and belief, are or, at all times material hereto, were members of the Committee and fiduciaries of the Plan within the meaning of ERISA.

## MR. STANTON'S EMPLOYMENT WITH NCR

11.     Mr. Stanton, who was born on April 6, 1939, was a full-time employee of NCR in Ohio from October 10, 1961 through January 1, 1970.  Between January 1, 1970

and on or about October 1, 1971, Mr. Stanton took an unpaid leave of absence authorized by the Company.  Mr. Stanton returned to full-time employment at NCR on or about October 1, 1971, and remained there full-time until February 15, 1980.

12.     At no point during his employment with NCR did Mr. Stanton receive any summary of material modifications, benefit statements, or annual reports pertaining to the Plan, let alone his benefits under the Plan.

13.     At no point during his employment with NCR did Mr. Stanton make contributions to the Plan.

## THE ORIGINAL PLAN

14.     The Company established the Plan in 1940 to provide retirement benefits to Employees who become covered under the Plan.

15.     The Plan originally was named The Retirement Plan for Employees of The National Cash Register Company (the "Original Plan").   The Original Plan was applicable to all full-time employees of the Company employed in the United States and to certain former employees who were citizens of the United States and employed by a subsidiary or a sales agent of the Company outside of the United States.

## THE 1963 PLAN

16.     NCR issued a booklet explaining the details on the Plan as amended and in effect January 1, 1963 (the "1963 Plan").  A copy of the 1963 Plan booklet is attached as **Exhibit 1.**

17.     The preface to the 1963 Plan booklet stated that "[t]he NCR Retirement Plan offers two forms of **assured** income to **employees** after retirement.  One is called the Contributing Annuity, the other the Non-Contributing Annuity."  (Emphasis supplied.)

18.     The preface to the 1963 Plan booklet further stated that "[t]he Non-Contributory Annuity" [under the 1963 Plan] is **paid for entirely by the Company**. Together with social security, the Non-Contributing Annuity provides a reasonable retirement income based solely upon credited service." (Emphasis supplied.)

19.     Page 24 of the 1963 Plan booklet defined "Credited Service" as "the period of full-time employment by the Company which is continuous up to retirement date, except as follows: … (b) Absence on authorized leave of absence **shall** not break continuous service and the period absent **shall** be included in Credited Service." (Emphasis supplied.)

20.     Page 22 of the 1963 Plan booklet stated that "[a] Non-Contributing Employee is an active or former Employee of the Company who has 10 or more years of Credited Service and who does not qualify for any benefit of the Plan which is based on Employee contributions."  That said, page 4 of the 1963 Plan booklet provided that "[t]he Plan is for **all** full-time employees of the Company in the Continental United States and Hawaii."  (Emphasis supplied.)

21.     Page 22 of the 1963 Plan booklet stated that "[a] Non-Contributing Employee whose employment is terminated after his 40th birthday but before his 55th birthday shall, upon application to the Company, be retired under the Plan as of the first of the month next following his 65th birthday, or the month after application if later, with his monthly annuity computer in the same manner as in effect at the time of his termination of employment." (Emphasis supplied.)

22.     Page 26 of the 1963 Plan booklet also stated that "[t]he monthly annuity provided for a Non-Contributing Employee may be purchased from the Insurance Company when he retires or may be otherwise provided by the Company. "

23.     Importantly, page 25 of the 1963 Plan booklet stated: "At no time prior to the satisfaction of all liabilities under the Plan to Employees, Joint Annuitants and Beneficiaries, shall any part of the corpus or income of the Pension Fund be used for or diverted to any other purpose than for their exclusive benefits."

24.     Likewise, page 27 of the 1963 Plan booklet stated that "[**n]o retroactive amendment shall be made unless required to qualify or retain the qualification of the Plan** under the Internal Revenue Code or any other law." (Emphasis supplied.)

25.     Pages 27 to 28 of the 1963 Plan booklet further stated that "[i]f the Company should discontinue contributions for the purpose of terminating the Plan," then "the portion of the Pension Fund attributable to contributions of the Company for Non-

Contributing Employees … shall be segregated and … provide proportionately for retired Non-Contributing Employees the monthly annuities for which they are then eligible ….”

## THE 1969 PLAN

26.     The Plan was amended effective January 1, 1969 (the “1969 Plan”).  A copy of the 1969 Plan is attached as **Exhibit 2.**

27.     The 1969 Plan defined “Employee” as, among other things, “a full-time employee of the Company in the United States” who, like Mr. Stanton, was “an executive, administrative, professional or confidential employee.”

28.     Part I of the 1969 Plan included within the definition of “participant” all eligible employees who had completed 10 or more years of Credited Service and who were not entitled to participate in Part II of the 1969 Plan (the contributory portion of the Plan).

29.     The 1969 Plan defined “Credited Service” as “the period of full-time continuous employment by the Company … up to the date of the participant’s retirement or other termination of employment.”  The 1969 Plan did not define “termination of employment” and did not contain an express “Break in Service” provision.

30.     Mr. Stanton had nine years and one full month of Credited Service under the terms of the 1969 Plan prior to his authorized leave of absence on January 1, 1970.

## THE 1972 PLAN

**31.**     Effective January 1, 1972, the Plan was amended and its name changed to the Retirement Plan for Salaried Employees (the "1972 Plan").    A copy of the 1972 Plan is attached as **Exhibit 3.**

**32.**     Like its predecessor version, the 1972 Plan defined "Participant" as an eligible Employee who had completed ten years of Credited Service and who, like Mr. Stanton, was not entitled to any benefit under the contributory part of the Plan.

**33.**     Like its predecessor version, the 1972 Plan defined "Credited Service" as "the period of full-time continuous employment by the Company … up to the date of the Participant's retirement or other termination of employment."  Like its predecessor version, the 1972 Plan provided that an "authorized leave of absence determined in accordance with uniform rules applicable to all Employees similarly situated **shall** not break continuous employment and the period of absence **shall** be included in Credited Service." (Emphasis supplied.)  The 1972 Plan further provided that "[p]eriods prior to the effective date the Employee became a participant in this Plan and which were recognized as Credited Service under a tax qualified plan of the Company for which such Employee was eligible prior to such effective date **shall** be included in Credited Service hereunder…." (Emphasis supplied.)

**34.**     Because NCR authorized his leave of absence in 1970, Mr. Stanton's leave of absence between January 1, 1970 and October 1, 1971 did not break his continuous

employment and, per the terms of the 1972 Plan, was required to be included in computing his credited service.

35.     Mr. Stanton completed 10 years of credited service on October 10, 1971. Thus, Mr. Stanton became a "Participant" per the terms of the 1972 Plan on October 10, 1971.

36.     Under the 1972 Plan, the basic "Monthly Pension" payable to a Participant who retired on his Normal Retirement Date (the first day of the month following his 65th birthday) equaled the sum of the following: 3/4 of 1% of the first $650 of Participant's "Final Average Monthly Salary", plus 1% of the Participant's "Final Average Monthly Salary" in excess of $650, multiplied by the number of years of "Credited Service" to which the Participant was entitled. The term "Final Average Monthly Salary" meant the Participant's "average monthly salary for the highest five· consecutive years during the last ten years immediately preceding the last day worked prior to retirement or other termination of employment, excluding overtime, commissions, bonuses and any other special compensation."

37.     Mr. Stanton's Final Average Monthly Salary at the time he left NCR on February 15, 1980 was approximately $2,666.67. He had accrued 14.5 years of Credited Service by that time. Thus, per the 1972 Plan, Mr. Stanton's "Monthly Pension" was $964.83.

**38.**     Mr. Stanton's Normal Retirement Date under the 1972 Plan was May 1, 2004.

## THE 1974 PLAN

**39.**     The 1972 Plan was amended effective January 1, 1974 (the "1974 Plan"). A copy of the 1974 Plan is attached as **Exhibit 4.**

**40.**     The 1974 Plan did not make substantive changes to the 1972 Plan's definitions of "Employee," "Participant," or "Credited Service."  Nor did the 1974 Plan contain an express "Break in Service" provision.

## THE 1976 PLAN

**41.**     Effective January 1, 1976, the Plan was amended and its name changed to "The Retirement Plan for Salaried Employees of NCR Corporation" (the "1976 Plan"). A copy of the 1976 Plan is attached as **Exhibit 5.**

**42.**     Part II, Section I, paragraph C of the 1976 Plan provided that "any person who immediately prior to January 1, 1976 was an Employee as defined in the Plan at that time, **shall** be a Participant."  (Emphasis supplied.)  The 1976 Plan otherwise stated (in Part II, Section I, paragraph A) that an Employee shall become a Participant on the first of the month next following the date on which he turned 25 and completed one Year of Service.

43.     Immediately prior to January 1, 1976, Mr. Stanton was an Employee as defined by the Plan at that time.  Thus, Mr. Stanton was a "Participant" in accordance with Part II, Section I, paragraph C of the 1976 Plan.

44.     Alternatively, Mr. Stanton would have become a Participant in accordance with Part II, Section I, paragraph A of the 1976 Plan because he met the eligibility requirements set forth in paragraph A during his employment with NCR.

45.     The 1976 Plan employed the same definition of "Credited Service" as its predecessor version.

46.     Part II, Section 2, paragraph B of the 1976 Plan stated that "if an Employee on December 31, 1975 has 10 or more years of [] Credited Service, such an Employee **shall** be a **Vested** Participant."  (Emphasis supplied.)  Paragraph B further stated that "Periods of Credited Service before January 1, 1976 credited under the Plan as in effect before that date, **shall** be credited for the same purposes after that date." (Emphasis supplied.)

47.     On December 31, 1975, Mr. Stanton had more than 10 years of Credited Service as defined by the Plan then in effect.  Thus, Mr. Stanton was a "Vested Participant" in accordance with Part II, Section 2, paragraph B of the 1976 Plan.

48.     Alternatively, Mr. Stanton was a "Vested Participant" in accordance with Part II, Section 2, paragraph A of the 1976 Plan, which stated: "A Participant shall be a 'Vested Participant' when he has completed 10 or more Years of Service <u>or when he</u>

reaches the Normal Retirement Date [(*i.e.,* the "first day of the month next following [the participant's] 65th birthday"], whichever is earlier, and shall have a non-forfeitable right to his· accrued 'Basic Monthly Benefit' …."   (Emphasis supplied.)

49.     Benefits for married vested participants, like Mr. Stanton, were payable in the form of a Joint and Survivor Annuity and, for unmarried participants, in the form of a Single Life Annuity payable during their lifetime.

50.     The 1976 Plan stated that "[n]ine months prior to a married Participant's earliest Optional Early Retirement Date the Participant shall be furnished a written explanation of his Normal Form of Benefit" which "shall set forth the manner in which an Optional Form of Benefit may be requested, the relative financial effect on a Participant's benefits  of such a request and shall define the circumstances in which the Joint and Survivor Annuity will be provided unless the Participant has elected another form of benefit …."  Mr. Stanton was not provided this written explanation at any time.

## NCR'S PENSION PLAN HANDBOOK

51.     NCR's Pension Plan Handbook states that vesting service includes any service the Employee earned *even while not eligible to participate in the Plan*.  A copy of NCR's Pension Plan Handbook is attached as **Exhibit 6.**  NCR's Pension Plan Handbook also states that "[p]ast service, which was recognized under the Pension Plan (or any other NCR Sponsored U.S. tax-qualified retirement plan) at the time, was restored when you were rehired, regardless of the break."

**52.**     Like the 1976 Plan, NCR's Pension Plan Handbook recognized that Mr. Stanton was a vested participant in the Plan.

## NCR'S ACTIONS TO DERISK AFTER 1980

**53.**     After Mr. Stanton left NCR on February 15, 1980, the Company amended the name of the Plan to the NCR Pension Plan, and eventually froze participation to new hires as well as all existing benefit accruals.

**54.**     In 2012, NCR gave 23,000 former employees who were eligible for but not yet receiving monthly pension payments the opportunity to convert their future annuity to a lump-sum benefit.  NCR, upon information and belief, did not properly amend the Plan to allow this conversion right before offering it to these former employees.

**55.**     In June 2014, NCR gave about 20,000 pension plan participants receiving benefits the opportunity to convert their monthly annuity to a lump-sum benefit. The offer was made to former employees or beneficiaries who began receiving pension benefits between Jan. 1, 1994, and April 1, 2014.  NCR, upon information and belief, did not properly amend the Plan to allow this conversion right before offering it to these former employees.

**56.**     In December 2014, NCR purchased a group annuity through Principal Life Insurance Company to provide pension benefits to about 4,500 retirees and their beneficiaries.  NCR transferred approximately about $160 million in Plan obligations to Principal Life.

## MR. STANTON'S CLAIM FOR BENEFITS UNDER THE PLAN

**57.**     Mr. Stanton telephoned NCR Benefits Center in June 2016 to inquire about his pension benefits under the Plan.

**58.**     By letter on December 28, 2016, <u>NCR conceded that there were no "break in service" rules in effect at the time Mr. Stanton left the Company in 1971</u>. This notwithstanding, NCR contended that Mr. Stanton failed to meet the 10-year service requirement under the Plan to receive benefits.  A copy of NCR's December 28, 2016 letter is attached as **Exhibit 7.**

**59.**     By letter dated March 9, 2017, Mr. Stanton, through his attorney, formally requested payment of his vested benefits under the Plan.  A copy of counsel's March 9, 2017 letter is attached as **Exhibit 8.**

**60.**     In the March 9, 2017 letter, counsel stated:

Mr. Stanton worked at NCR from 1961-1970 and again from 1971-1980.  When he was rehired in 1971, a letter was apparently sent from the Cleveland NCR branch (where Mr. Stanton was rehired) to the headquarters in Dayton, Ohio stating that Mr. Stanton would have the same employee number and all benefits would be reinstated, including full participation in the pension plan as if he had not left the company. The letter went on to state that Mr. Stanton's absence from the company would be considered a leave of absence and not a

termination.  Mr. Stanton's records at NCR should show 16 years of service, enough to qualify for benefits under the pension plan in effect during his employment with the company.

61.     By letter dated March 27, 2017, the Committee denied Mr. Stanton's claim for benefits based on the non-existent "break in service" provisions it claimed appeared in the 1969, 1972, and 1974 versions of the Plan.  The Committee claimed it had no record of having treated Mr. Stanton's absence as a leave.  The Committee further stated that because Mr. Stanton worked fewer than 10 years of service when he left employment in 1970, he did not have a vested interest in any Plan benefits.  The Committee then misstated that Mr. Stanton could bring a civil action under ERISA within one year of the date of his original claim for benefits under the Plan.  A copy of the Committee's March 27, 2017 letter is attached as **Exhibit 9.**

62.     Mr. Stanton timely appealed the Committee's adverse determination. A copy of Mr. Stanton's appeal letter is attached as **Exhibit 10.**

63.     By letter dated May 8, 2017, the Committee upheld its denial of Mr. Stanton's claim on appeal, and notified Mr. Stanton that he had exhausted his administrative remedies under the Plan.  In its letter, the Committee again misstated that Mr. Stanton could bring a civil action under ERISA within one year

of the date of his original claim for benefits under the Plan. A copy of the

Committee's denial letter on appeal is attached as **Exhibit 11.**

    **64.**    All conditions precedent to this action have been satisfied or waived.

## CLASS ACTION ALLEGATIONS

    **65.**    Mr. Stanton brings this action on his own behalf and, pursuant to the

provisions of the Federal Rules of Civil Procedure, on behalf of a class of all others

similarly situated, defined as follows:

    (a)    All Participants in the Plan, including Participants in former employee

benefit plans that merged into the Plan, whether active, inactive or retired, and

their beneficiaries, surviving spouses, and Estates; who were employed by the

Company both before and on or after January 1, 1976; who became Participants

under the 1976 Plan in accordance with Part II, Section 1, paragraph C of the 1976

Plan; and who did not receive Credited Service, in whole or in part, in accordance

with Part II, Section 2, paragraph B of the 1976 Plan because of a pre-ERISA

break in their service (collectively, "Subclass A").

    (b)    All Participants in the Plan, including Participants in former employee

plans that merged into the Plan, whether active, inactive or retired, and their

beneficiaries, surviving spouses, and Estates; who were employed by the Company

on or after January 1, 1976; who became Participants in accordance with Part II,

Section 1, paragraph A of the 1976 Plan; who had not completed 10 or more Years

of Service at the time they terminated employment with NCR; and who did not receive their Basic Monthly Benefit, in whole or in part, upon their Normal Retirement Date in accordance with Part II, Section 2, paragraph A of the 1976 Plan (collectively, "Subclass B").

66. The requirements for maintaining this action as a class action under Rule 23(b)(l) and (b)(2), Federal Rules of Civil Procedure, are satisfied in that:

(a) Subclass A and Subclass B (disjunctively, the "appropriate Subclass") are large in number; the exact number and identities of all members of the appropriate Subclass are currently unknown to Mr. Stanton, but are well known to Defendants. The number of members of the appropriate Subclass is believed to be no less than 100.

(b) The members of the appropriate Subclass are so numerous that joinder of all members is impracticable;

(c) There are questions of law common to all members of the appropriate Subclass, including but not limited to whether Defendants violated and continues to violate ERISA by: (i) failing and/or refusing to apply ERISA's rule of parity to pre-ERISA breaks in service;(ii) providing a lower accrual rate to pre-ERISA years of participation in the absence of any provision in the Plan or ERISA authorizing it;  (iii) diverting Plan assets other than for the exclusive benefit of Plan Participants and their beneficiaries; (iv) by failing to provide Plan participants with

notices of their right to benefits at early retirement and/or at their Normal

Retirement Dates; (v) by failing to monitor other Plan fiduciaries; (vi) by

misrepresenting the terms of the Plan to Participants; (vii) by failing to follow the

terms of the Plan; and (vii) by engaging in prohibited transactions.

(d) Mr. Stanton is a member of Subclass A, as defined above; his claim is

typical of the claims of the members of Subclass A and he will fairly and

adequately protect the interests of the Subclass A. Mr. Stanton's interests are

coincidental with, and not antagonistic to those of the remainder of Subclass A,

and he is represented by experienced ERISA counsel.

(e) Alternatively, Mr. Stanton is a member of Subclass B, as defined above;

his claim is typical of the claims of the members of Subclass B and he will fairly

and adequately protect the interests of the Subclass B. Mr. Stanton's interests are

coincidental with, and not antagonistic to those of the remainder of Subclass B, and

he is represented by experienced ERISA counsel.

(f) The prosecution of separate actions by individual members of the

appropriate Subclass would create the risk of inconsistent or varying adjudications

establishing incompatible standards of conduct for Defendants, and a risk of

adjudications which as a practical matter would be dispositive of the interests of

other members of the appropriate Subclass who were not parties; and

(g) Defendants have acted and/or refused to act and are likely to act and/or refuse to act on grounds generally applicable to the appropriate Subclass, thereby making appropriate final injunctive and other equitable relief with respect to the appropriate Subclass as a whole.

## COUNT I

## CLAIM FOR BENEFITS AND CLARIFICATION OF RIGHTS

## PURSUANT TO 29 U.S.C. § 1132(A)(1)(B)

### (Against Defendants NCR and the Plan)

**67.**     Plaintiff realleges and incorporates in Count I the allegations in Paragraphs 1 through 66 of the Complaint as if fully restated herein.

**68.**     The terms of the Plan and ERISA prohibited NCR from divesting the vested benefits of Mr. Stanton and similarly situated class members.

**69.**     As a direct and proximate result of the improper acts and/or omissions herein alleged, Plaintiff and similarly situated class members have had benefits wrongfully withheld to which they are entitled under the terms of the Plan.

**70.**     Accordingly, Plaintiff, both individually and on behalf of similarly situated class members, brings this suit to recover benefits due under ERISA, to enforce and clarify rights under ERISA, and to enforce the terms of the Plan, pursuant to 29 U.S.C. § 1132(a)(1)(B).

**71.** Plaintiff further has been compelled to retain the services of an attorney in order to enforce and clarify these above rights under the Plan and ERISA. Accordingly, Plaintiff seeks reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiff Arthur Stanton prays for judgment as follows:

(a) Class certification under Rule 23 of the Federal Rules of Civil Procedure;

(b) An award of all benefits wrongfully withheld, with pre-judgment and post-judgment interest at the legal rate under O.C.G.A. § 7-4-12 until paid;

(c) A declaration clarifying Plaintiff's rights to benefits under the terms of the Plan;

(d) An Order compelling the Plan to make future payments to Plaintiff and putative class members in the correct amount;

(e) Reasonable attorney's fees and costs as authorized by statute, and ordering the payment of reasonable fees and expenses of this action to Plaintiff's counsel pursuant to the common fund theory out of the money recovered for the Plan, Plaintiff, and/or the others similarly situated; and

(f) For such other and further relief as the Court may deem proper.

# COUNT II

# CLAIM FOR BREACH OF FIDUCIARY DUTY

# UNDER 29 U.S.C. §§ 1132(A)(2) AND (A)(3)

## (Against All Defendants Except the Plan)

72.    Plaintiff realleges and incorporates in Count II the allegations in Paragraphs 1 through 66 of the Complaint.

73.    29 U.S.C. § 1132(a)(3) authorizes appropriate equitable relief against Plan fiduciaries.

74.    29 U.S.C. § 1132(a)(2) authorizes Plaintiff to bring a civil action on behalf of the Plan for relief under ERISA 29 U.S.C. § 1109.

75.    29 U.S.C. § 1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

76.    29 U.S.C. §§ 1104(a)(1)(A) and (B) provides, in pertinent part, that a fiduciary "shall discharge his duties with respect to a plan solely in the interest of

the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." These fiduciary duties are referred to as the duties of loyalty, exclusive purpose and prudence, and are the "highest known to the law."

77. Under 29 U.S.C. § 1109(a), any fiduciary who breaches any of the responsibilities, obligations or duties imposed by 29 U.S.C. §§ 1104(a)(1)(A) and (B) shall be personally liable to make good to a plan any losses to that plan resulting from each breach and shall be subject to such other equitable and remedial relief as the court may deem appropriate.

78. Pursuant to 29 U.S.C. § 1104(a)(1), Defendants were required to discharge their duties with respect to the Plan and Plan participants solely in the interests of the participants with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and of like aims.

79. Defendants' fiduciary duties included but were not limited to the duty to select and monitor Plan fiduciaries; to provide Plan participants and

beneficiaries the documents required to be automatically furnished under ERISA; to prudently manage Plan assets; to follow the terms of the Plan; to not interfere with participants' attainment of vested benefits under the Plan; and to not misrepresent the terms of the Plan.

80.    NCR, as the Plan sponsor, had the fiduciary duty to appoint a Plan administrator that was without a conflict of interest, to monitor the chosen Plan administrator, and to remove if necessary the chosen Plan administrator.

81.    Ms. Ledford had a fiduciary duty to appoint members of the Committee and, in that regard, was required to appoint members that were without a conflict of interest, to monitor the chosen Committee members, and to remove if necessary the chosen Committee members if, as here, they did not comply with their own fiduciary obligations to the Plan and Plan participants.

82.    NCR, the Committee, and the individual members of the Committee, as Plan Administrators, had the fiduciary responsibility, among other things:

(a) to furnish Plaintiff and similarly situated Plan participants a copy of the summary plan description ("SPD") and/or all modifications or changes at the times and intervals required under 29 U.S.C. § 1024(b)(1) and/or 29 C.F.R. §§ 2520.104b-1, 2520.104b-2, 2520.104b-3, 2520.104b-4;

(b) to not impose provisions of or amendments to the Plan that violated the anti-cutback provisions of ERISA and the Internal Revenue Code;

(c) to provide Plaintiff and similarly situated Plan participants with a written explanation of their Normal Form of Benefit nine months prior to their earliest Optional Early Retirement Date;

(d)  to reasonably explain to plan participants and beneficiaries the material terms and conditions of the relevant plan documents and provide them with adequate notice of what they need to do for eligibility and entitlement to benefits;

(f) to provide correct information to Plan participants like Plaintiff upon their inquiries into Plan benefits;

(g)  to adequately select, train, and monitor their personnel so that misinformation about the Plan, terms of the Plan, and procedures necessary to effect claims for benefits under the Plan does not occur;

(h)  to send participants like Plaintiff written notice that their future accrual of benefits would be reduced as a result of the 1976 Plan amendments;

(i)  to not intentionally withhold or conceal Plan information from Plaintiff and similarly situated Plan participants;

(j)  to not divert Plan assets for their own self-interest; and

(k)  to take prudent steps so that at no time prior to the satisfaction of all liabilities to Employees, Joint Annuitants, and Beneficiaries would any part of the corpus or income of the Plan be used or diverted to any purpose other than for their exclusive benefit.

**83.**    Defendants breached these fiduciary duties in one or more of the following ways:

(a) By failing to furnish Plaintiff and similarly situated Plan participants a copy of the summary plan description ("SPD") and/or all modifications or changes at the times and intervals required under 29 U.S.C. § 1024(b)(1) and/or 29 C.F.R. §§ 2520.104b-1, 2520.104b-2, 2520.104b-3, 2520.104b-4, or at any other time before, during, or after their employment, thus preventing Plaintiff and other participants from learning of the existence and terms of their rights under the Plan;

(b) By violating 29 U.S.C. §§ 1022(a) and (b), and accompanying regulations from the U.S. Department of Labor, by purporting to impose provisions that violated the anti-cutback provisions of ERISA and the Internal Revenue Code;

(c) By failing to provide Plaintiff and similarly situated Plan participants with a written explanation of their Normal Form of Benefit nine months prior to their earliest Optional Early Retirement Date;

(d)  By discharging their duties in their own interests;

(e) By failing to reasonably explain to plan participants and beneficiaries the material terms and conditions of the relevant plan documents and provide them with adequate notice of what they need to do for eligibility and entitlement to benefits;

(f) By providing incorrect information to Plan participants like Plaintiff upon their inquiries into Plan benefits;

(l)　　By failing to adequately select, train, and monitor their personnel so that misinformation about the Plan, terms of the Plan, and procedures necessary to effect claims for benefits under the Plan does not occur;

(m)　By failing to send participants like Plaintiff written notice that their future accrual of benefits would be reduced as a result of the 1976 Plan amendments;

(n)　By intentionally withholding or concealing Plan information from Plaintiff and similarly situated Plan participants;

(o)　By diverting Plan assets for their own self-interest;

(p)　By not following plain and unambiguous Plan terms;

(q)　By improperly trying to amend the Plan and to retroactively reduce owing Plan benefits;

(r)　By allowing (and encouraging) other Plan participants to improperly change the form and timing of the distribution of Plan benefits; and

(s)　By not correcting the misrepresentations made by other Defendants about eligibility for and entitlement to benefits under the Plan.

84.     Each of the Defendants knew that the other Defendants were not acting in the best interests of the Plan, or the participants and beneficiaries in the Plan.

85.     NCR also breached its fiduciary duty by authorizing Ms. Ledford to appoint and supervise members of the Committee, when she was not qualified for that position, and then failing to supervise Ms. Ledford in her fiduciary endeavors.

86.     Ms. Ledford breached her fiduciary duty by appointing members of the Committee who were not qualified to serve as Plan administrators, and then failing to supervise Committee members in their fiduciary endeavors.

87.     Each of the Committee members breached his/her fiduciary duty by, *inter alia,* misapplying and refusing to follow plain and unambiguous Plan terms, diverting Plan assets for their own interests, allowing (and encouraging) other Plan participants to improperly change the form and timing of the distribution of Plan benefits; and not correcting the misrepresentations made by other Defendants about eligibility for and entitlement to benefits under the Plan.

88.     Through their breaches of fiduciary duties described above, Defendants wrongfully retained millions of dollars belonging to the Plan, Plaintiff and others similarly situated.

89.     The Plan, Plaintiff, and others similarly situated were injured as a result of Defendants' breaches of their fiduciary duties.

**90.** The Plan lost significant value as a result of their breaches and surplus in the Plan was lost.

**91.** During their employment and for many years thereafter, Plaintiff and others similarly situated were not aware of their rights under the Plan and the terms and limitations governing them, as they never at any time received any documents from NCR or the Committee describing those rights and they were never orally informed of them. Plaintiff and others similarly situated did not become aware of their rights under the Plan until years after their retirement. Plaintiff and others similarly situated also were deprived of the right to make a claim for Early Retirement Benefits under the Plan and interest on their benefits.

**92.** Defendants knew the above breaches occurred and continued to occur, but failed to make reasonable efforts to remedy the breaches, for example, in not providing Plan documents to Plaintiff and other participants, and in not correcting misrepresentations made to Plan participants.

**93.** At all material times, Defendants knew or should have known their continued silence could harm participants, including Plaintiff and others similarly situated, in the future by depriving them of their rights under the Plan.

**94.** Each Defendant, thus, is liable for the others' breaches of fiduciary duty pursuant to 29 U.S.C. § 1105(a)(3).

95.     Defendants are jointly and severally liable to make good and to pay to the Plan, Plaintiff, and similarly situated Plan participants any losses sustained as a result of their above breaches of fiduciary duties.

96.     Pursuant to the provisions of ERISA, the Defendants are liable and should pay the attorney's fees and costs incurred by the Plaintiff in this action.

97.     Pursuant 29 U.S.C. § 1132(a)(3), the Court should also award appropriate equitable relief, including but not limited to restitution.

WHEREFORE, Plaintiff prays for judgment and relief as follows:

(a)     Class certification under Rule 23 of the Federal Rules of Civil Procedure;

(b)     An equitable surcharge for unjust enrichment to recover the benefits lost or withheld and to make the Plan, Plaintiff, and Class whole;

(c)     disgorgement of all profits improperly retained by Defendants;

(d)     reformation of the Plan to the extent needed to equitably address and pay Plaintiff's and similarly situated participants' claims for the entirety of the benefits that to which they are entitled;

(e)     equitable estoppel preventing Defendants from relying on the improper Plan amendments that purport to reduce accrued benefits, misinformation, and the failure to give correct and accurate information to Plaintiff and similarly situated Plan participants;

(f)     Costs, interest, and attorneys' fees under 29 U.S.C. § 1132(g), and ordering the payment of reasonable fees and expenses of this action to Plaintiff's counsel pursuant to the common fund theory out of the money recovered for the Plan, Plaintiff, and/or the others similarly situated; and

(g)     Such other or further relief this Court deems just and proper.

## COUNT III

## CLAIM FOR RELIEF UNDER 29 U.S.C. § 1132(c)(1)(B)

## (Against All Defendants Except the Plan and Ms. Ledford)

**98.**     Plaintiff realleges and incorporates in Count III the allegations in Paragraphs 1 through 66 of the Complaint as if fully restated herein.

**99.**     A claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) may be simultaneously pled with a 29 U.S.C. § 1132(c)(1)(B) claim for failure to disclose Plan information, as they provide separate and distinct remedies. *See, e.g., Poole v. Life Ins. Co. of N.A.*, 984 F. Supp. 2d 1179 (M.D. Ala. 2013).

**100.**     During their employment and for many years thereafter, Plaintiff and other similarly situated participants were not aware of their rights under the Plan and the terms and limitations governing them, as they never at any time received any documents from Defendants describing those rights and they were never orally informed of them.

**101.**    Plaintiff and other similarly situated participants did not become aware of their rights under the Plan until years after their retirement.

**102.**    Defendants, as Plan Administrators, breached their statutory duties to Plaintiff and others similarly situated by:

(a) failing to furnish them a copy of the summary plan description ("SPD") and/or all modifications or changes at the times and intervals required under 29 U.S.C. § 1024(b)(1) and/or 29 C.F.R. §§ 2520.104b-1, 2520.104b-2, 2520.104b-3, 2520.104b-4, or at any other time before or after his employment, thus preventing Plaintiff from learning of the existence and terms of his rights under the Plan;

(b) violating 29 U.S.C. §§ 1022(a) and (b), and accompanying regulations from the U.S. Department of Labor, by purporting to impose provisions that violated the anti-cutback provisions of ERISA and the Internal Revenue Code;

(c) failing, at any time during or after their employment, to notify them of their right to obtain benefits under the Plan; and

(d) failing to provide them with a written explanation of their Normal Form of Benefit nine months prior to their earliest Optional Early Retirement Date.

WHEREFORE, pursuant to 29 U.S.C. § 1132(c), Plaintiff requests entry of judgment against Defendants and an award of statutory relief as follows:

(a)    Class certification under Rule 23 of the Federal Rules of Civil Procedure;

(b)      $110 per day from October 10, 1971 to the date of judgment, for

failure to furnish an SPD to Plaintiff within 90 days of becoming a Plan

Participant; and/or

(c)      $110 per day from the earliest date of each five-year period in which

Defendant failed to furnish an updated SPD; and/or

(d)      $110 per day from July 6, 1993 to the date of judgment, for failure to

a written explanation of his Normal Form of Benefit nine months prior to his earliest

Optional Early Retirement Date; and/or

(e)      $110 per day from January 1, 2007 to the date of judgment for failure

to furnish Plaintiff with an SMM; as well as

(f)      Costs, interest, and attorneys' fees under 29 U.S.C. § 1132(g), and

ordering the payment of reasonable fees and expenses of this action to Plaintiff's

counsel pursuant to the common fund theory out of the money recovered for the

Plan, Plaintiff, and/or the others similarly situated; and

(g)      Such other or further relief this Court deems just and proper.

# COUNT IV

## CLAIM FOR BREACH OF FIDUCIARY DUTY UNDER 29 U.S.C. §§ 1132(A)(2) AND (A)(3)

### (Against All Defendants Except the Plan)

**103.** Plaintiff realleges and incorporates in Count IV the allegations in Paragraphs 1 through 66 of the Complaint.

**104.** 29 U.S.C. § 1132(a)(2) authorizes Plaintiff to bring this claim for relief on behalf of the Plan.

**105.** 29 U.S.C. § 1132(a)(3) authorizes appropriate equitable relief against Plan fiduciaries.

**106.** ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to use assets for the benefit of a party in interest, as defined by 29 U.S.C. § 1002(14), if it/he/she knows or should know that such transaction constitutes a use of plan assets for the benefit of a party in interest.

**107.** 29 U.S.C. § 1106(b)(1) prohibits the use of plan assets by a fiduciary with respect to a plan in its/his/her own interest or for his own account.

**108.** As fiduciaries with respect to the Plan, Defendants are parties in interest with respect to the Plan under ERISA.

**109.** Participants in the Plan also are parties in interest as defined by ERISA.

**110.** By failing to enforce the Plan's provisions regarding the time and form of distribution of benefits as to participants other than Plaintiff and others similarly situated, and seeking to reduce the size of the Plan's liabilities before satisfying all obligations owed to Plaintiff and others similarly situated, Defendants have used Plan assets for their own benefit.

**111.** Defendants knew or should have known that their failure to enforce the Plan's provisions regarding the time and form of distribution of benefits, and their seeking to reduce the size of the Plan's liabilities before satisfying all obligations owed to Plaintiff and others similarly situated, constituted such a use of Plan asset, in violation of 29 U.S.C. § 1106(a)(1)(D).

**112.** By failing to enforce the Plan's provisions regarding the time and form of distribution of benefits, and their seeking to reduce the size of the Plan's liabilities before satisfying all obligations owed to Plaintiff and others similarly situated, Defendants improperly have used plan assets in their own interest or for their own account and, in doing so, caused Plaintiff and others similarly situated to suffer a loss equal to the foregone funding and earnings thereon.

**113.** The failure of Defendants (and their predecessors) to enforce the Plan's provisions regarding the time and form of distribution of benefits, and their

seeking to reduce the size of the Plan's liabilities before satisfying all obligations owed to Plaintiff and others similarly situated, improperly has profited Defendants (and their predecessors) by providing them the use of money owed to the Plan for the general business purposes of Defendants (and their predecessors) and, in doing so, caused a loss to the Plan equal to or exceeding the profits wrongfully retained by Defendants.

114.     Each of the Defendants knew or should have known of the foregoing prohibited transactions but, nonetheless, caused the Plan to engage in these violations.

115.     By knowingly participating in the foregoing breaches of fiduciary duty of 29 U.S.C. §§ 1104(a) and 1106(a) by the other Defendants, each of the Defendants is personally liable to disgorge any benefit that it/he/she has received which is traceable to such breaches or may be ordered to rescind any benefit which it/he/she received by virtue of Defendants' failure to have the Plan comply with ERISA (if that is in the best interest of the Plan).

WHEREFORE, Plaintiff requests entry of judgment against Defendants and an award of relief as follows:

(a)     Class certification under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Reformation of the Plan to comply with ERISA, including its provisions governing vesting, funding, and accrual of benefits and the provision of benefits in the form of a qualified joint and survivor annuity;

(c)     Requiring the adoption of an instrument governing the Plan that complies with ERISA;

(d)     Requiring the Establishment of a Trust to hold the assets of the Plan in compliance with ERISA;

(e)     Requiring Defendants, and each of them, to make the Plan whole for any losses caused to the Plan by the failure of Defendants (and their predecessors) to disgorge any profits they made by failing to enforce the Plan's provisions regarding the time and form of distribution of benefits, and their seeking to reduce the size of the Plan's liabilities before satisfying all obligations owed to Plaintiff and the Class;

(f)     Appointing an Independent Fiduciary or Fiduciaries authorized to hold the Plan's assets in Trust, manage and administer the Plan, enforce the terms of ERISA and the Plan against Defendants, and manage the Plan's assets;

(g)     Requiring that Plaintiff and each similarly situated Participant be offered the same opportunity to elect the benefit in the form offered to other Plan participants in 2012 and 2014;

(h)     Requiring Defendants to pay attorney's fees and the costs of this

action pursuant to 29 U.S.C. § 1132(g)(1), and ordering the payment of reasonable

fees and expenses of this action to Plaintiff's counsel pursuant to the common fund

theory out of the money recovered for the Plan, the Plaintiff, and/or others

similarly situated; and

(i)     Ordering such other and further relief as the Court deems proper.

Respectfully submitted, this 20th day of June, 2017.

**THE SHARMAN LAW FIRM LLC**

/s/ *Paul J. Sharman*
PAUL J. SHARMAN
Georgia State Bar No. 227207

The Sharman Law Firm LLC
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022
Phone: (678) 242-5297
Fax: (678) 802-2129
Email: paul@sharman-law.com

Counsel for Plaintiff
