# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Arthur Stanton, on behalf of
himself and others similarly
situated,                                    Case No. 1:17-cv-02309

                      Plaintiff,        Michael L. Brown
                                    United States District Judge

v.

The NCR Pension Plan, et al.,

                      Defendants.

_____/

## **ORDER**

Plaintiff Arthur Stanton worked for the NCR Corporation ("NCR") from 1961 to 1980 with a year-long break from 1970 to 1971.  He sues for the payment of his benefits and also claims NCR and members of the NCR pension committee violated their fiduciary duties to him and others similarly situated.  Defendants move to dismiss the complaint for failure to state a claim and for lack of subject matter jurisdiction.  (Dkt. 16.)  The Court grants in part and denies in part Defendants' motion.

## I.   Background

Plaintiff Arthur Stanton worked for NCR from 1961 to 1970.  (Dkt. 1 ¶ 11.)  He took a leave of absence, which he claims was authorized, from January 1970 to October 1970, and then returned to NCR, working there until 1980.  (*Id.*)  He retired from the workforce in 2015 and sought benefits at that time.  (Dkt. 18 at 3.)

NCR first established a retirement benefits plan (the "Plan") in 1940.  (Dkt. 1 ¶ 14.)  NCR amended the Plan in 1962, 1969, 1972, and 1976.  (*Id.* ¶¶ 16, 26, 31, 39, 41.)  To receive benefits under the Plan, one must have been a "Participant."  (*Id.* ¶ 36.)  The Plan defined a Participant as someone who completed ten years of "Credited Service," defined as "the period of full-time employment by the Company which is continuous up to retirement date."  (*Id.* ¶ 19.)  The Plan made an exception to the continuous service requirement for authorized leaves of absence.  (*Id.* ¶ 33.)  According to the Plan, such absences "shall not break continuous service and the period absent shall be included in the Credited Service."  (*Id.*)  Although NCR amended the plan several times,

the terms at issue, "Credited Service" and "Participant," did not substantively change.[1]

Plaintiff had nine years and one month of Credited Service under the 1969 Plan when he took an authorized leave of absence. *(Id.* ¶ 30.) He came back to NCR in October 1971. (*Id.* ¶ 11.) He claims to have completed ten years of Credited Service in October 1971. (*Id.* ¶ 35.) After Plaintiff left NCR in 1980, NCR gave pension recipients and those eligible for future pension benefits opportunities to take a lump-sum payment instead of pension benefits. *(Id.* ¶¶ 54–56.) NCR did this to lower pension liabilities.

Plaintiff retired from the workforce in 2015. (Dkt. 18 at 3.) He called the NCR Benefits Center in June 2016 to ask about his benefits. (*Id.* ¶ 57.) That December, NCR informed him in a letter that he did not

---

[1] The 1969 Plan defined a plan "Participant" as someone who had completed ten years of Credited Service. (*Id.* ¶ 28.) The 1972 Plan used the same definition of Participant as the 1969 Plan and stated that authorized leaves of absence did not break the continuous service requirement of Credited Service. *(Id.* ¶¶ 32–33.) The 1974 Plan also did not change the definition of "Employee," "Participant," or "Credited Service." (*Id.* ¶ 39.) The 1976 Plan, the last modification of the plan before Plaintiff left NCR, kept the same Credited Service definition. (*Id.* ¶ 45.) The 1976 Plan also stated that "Periods of Credited Service before January 1, 1976 credited under the Plan as in effect before that date, shall be credited for the same purposes after that date." *(Id.* ¶ 46.)

meet the ten-year Credited Service requirement. *(Id.* ¶ 58.)  In March 2017, Plaintiff formally requested payment of his vested benefits.  *(Id.* ¶ 59.)  Defendant The Pension and Benefits Committee of the Plan (the "Committee") sponsors and maintains the Plan for the benefit of eligible members.  (*Id.* ¶ 7.)  The Committee denied Plaintiff's claim for benefits, reasoning that based on the Plan's break-in-service provisions, he did not have ten years of Credited Service.  (*Id.* ¶ 61.)  Plaintiff appealed the Committee's decision.  (*Id.* ¶ 62.)  The Committee denied his appeal and informed him that he had exhausted his administrative remedies.  (*Id.* ¶ 63.)

Plaintiff sued the Committee, NCR, and several individuals. Defendant Andrea Ledford is NCR's Corporate Services and Chief Human Resources Officer.  (*Id.* ¶ 8.)  The other individuals were, upon Plaintiff's belief, members of the Committee.  (*Id.* ¶ 9.)  Plaintiff sued in Count I for benefits and a clarification of rights against Defendants NCR and the Plan.  In Counts II and IV, he claims that all Defendants (except the NCR Pension Plan) violated their fiduciary duties.  In Count III, he claims all Defendants (except the Plan and Ms. Ledford) failed to disclose Plan information.  Defendants moved to dismiss all counts.

4

## II.    Standard of Review

A court may dismiss a pleading for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Bryant v. Avado Brands, Inc.*, 187, F.3d 1271, 1273 n.1 (11th Cir. 1999).

A court may also dismiss a pleading for "lack of subject matter jurisdiction."  FED. R. CIV. P. 12(b)(1).  If a defendant challenges the court's subject matter jurisdiction, then the plaintiff bears the burden of showing the court has subject matter jurisdiction, which entails showing the plaintiff has standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  There are three elements of standing: an injury-in-fact, "a causal connection between the injury and the conduct complained of," and a likelihood "the injury will be redressed by a favorable decision."

5

*Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009).

Attacks on subject matter jurisdiction can be "facial attacks" or "factual attacks." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). Facial attacks must "be based solely on the allegations in the complaint." *See id.* For factual attacks, a district court may consider "extrinsic evidence such as deposition testimony and affidavits." *Id.*

## III.   Motion to Exclude the Declaration of Patrick Carroll

Plaintiff moves to exclude the Declaration of Patrick Carroll, Chair of the NCR Corporation Plan Administration Committee for the NCR Pension Plan. (Dkt. 19.) Plaintiff argues that courts are limited to the four corners of the complaint when considering a 12(b)(6) motion. On this point, Plaintiff is correct. But, the Court may consider items outside the complaint in deciding a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See Carmichael*, 572 F.3d at 1279 (finding courts "may consider extrinsic evidence such as deposition testimony and affidavits" for factual attacks on the court's subject matter jurisdiction"). The Court finds that Mr. Carroll's affidavit is admissible for factual

attacks upon the Court's subject matter jurisdiction, but not admissible for the 12(b)(6) failure-to-state-a-claim arguments.

## IV.  Motion to Dismiss

### A.  Applicable Limitations Period

ERISA does not provide a statute of limitations for suits to recover benefits under 29 U.S.C. § 1132(a)(1)(B). *See Northlake Reg'l Med. Ctr. v. Waffle House Sys. Emp. Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir. 1998). Courts apply the forum state's applicable statute of limitations unless the parties have contractually agreed to a limitations period. *See Fetterhoff v. Liberty Life Assurance Co.*, 282 F. App'x 740, 744 (11th Cir. 2008) ("[W]here the parties have contractually agreed upon a limitations period, borrowing a state's statute of limitations is unnecessary."). Courts will enforce reasonable contractual limitations periods. *See Northlake*, 160 F.3d at 1303 (finding 90-day limitations period reasonable under the circumstances).

Defendants claim the 2016 Plan had a one-year limitations period. If that one year limitations period does not apply, Georgia has a six-year

statute of limitations for breach of contract.  Under either limitations period, Plaintiff's claims are not barred.[2]

The statute of limitations begins to run when a cause of action accrues and a plaintiff can file suit.  *Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1276–78 (11th Cir. 2014).  Such a claim "accrues when the plaintiff knew or should have known of the injury."  *Schwerman*, 155 F. App'x at 419.  Generally, this does not occur  "until the plan issues a final denial."  *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 (2013); *see also Paris v. Profit Sharing Plan*, 637 F.2d 357, 361 (5th Cir. 1981) ("We hold that for purposes of ERISA a cause of action does not accrue until an application is denied.").  In other words, a cause of action accrues when the plan administrator clearly repudiates a claim for benefits.  *See Witt*, 772 F.3d at 1276–78.

---

[2] The parties debate whether the 2016 Plan or the 1976 Plan controls. Plan providers can amend ERISA plans retroactively when that amendment "does not deprive participants of a benefit to which they would otherwise be entitled."  *Dyce v. Salaried Emps.' Pension Plan of Allied Corp.*, 15 F.3d 163, 166 (11th Cir. 1994).  If the 2016 Plan restricts Plaintiff's benefits or rights from the 1976 Plan, then the 1976 Plan controls.

Plaintiff first requested benefits in June 2016.  NCR denied his request in December 2016.  His benefits claim accrued upon that denial. He filed within one year, making his complaint timely.

Defendants argue NCR clearly repudiated Plaintiff's benefits in 2004 when he turned sixty-five, became eligible for retirement, and received no benefits.  The Plan states that Participants are eligible for benefits upon the Normal Retirement Date, which is the first day of the month following a Participant's sixty-fifth birthday.   (Dkt.  1  ¶ 65.) Defendants argue the failure to pay him in 2004 was a clear repudiation of his benefits.  They rely upon the Eleventh Circuit's decision in *Witt*.  In that case, a company paid injury benefits to a claimant but stopped paying when the claimant failed to supplement his injury's documentation.  772 F.3d at 1278.  The plaintiff sued twelve years later, seeking benefits.  *Id*.  The Eleventh Circuit found the company clearly repudiated his benefits claim when it stopped paying him, thus barring his claim.  *Id*.

*Witt* is not controlling here.   The failure to pay benefits not requested is fundamentally different from paying benefits and then stopping.  Plaintiff may have been eligible to receive benefits in 2004

when he turned sixty-five, but he never sought those benefits. And, the Plan did not require him to receive benefits at sixty-five such that its failure to pay would have provided a clear repudiation as in *Witt*. That is because section 6.C of the 1976 Plan allows a Vested Participant to elect not to retire at 65 and delay the receipt of benefits until subsequent retirement. That is what Plaintiff claims he did. He retired from the workforce in 2015, and first sought benefits in June 2016. (*See* Dkt. 18 at 3.) Added to this, Plaintiff alleges NCR never provided him information about changes to his plan or information that would have caused him to expect benefits when he turned sixty-five. (Dkt. 1 ¶12.)

More analogous than *Witt* is *Hoover v. Bank of America Corp.*, 286 F. Supp. 2d 1326 (S.D. Fla. 2003). In that case, a company wrote a former employee a letter informing him that he would not receive credit for his prior years of service. *Id.* at 1331. He later requested benefits. *Id.* The company denied that request. *Id.* He then sued for benefits, thirteen years after the company informed him that he would not receive credit for prior service. *Id.* The *Hoover* court found the letter informing him that he would not receive credit for the earlier service did not begin the limitations period. *Id.* at 1334–35. That court found the company clearly

10

repudiated the employee's benefits only upon denying his request. *Id.* The same is true here.   NCR's clear repudiation of Plaintiff's benefits claim happened in the December 2016 letter.   Indeed, Plaintiff here actually had less of a repudiation than the plaintiff in *Hoover* as Plaintiff alleges he received no letter suggesting he would not receive benefits until late 2016.

Moreover, Defendants' argument that Plaintiff should have known his benefits claim would accrue on his sixty-fifth birthday, absent any other communication from NCR, seeks to impose too high a standard for Plaintiff's ERISA knowledge.   Those seeking benefits under ERISA are not expected to have a super-technical knowledge of ERISA law. *See, e.g.*, *DeBene v. BayCare Health Sys.*, 688 F. App'x 831, 839 (11th Cir. 2017) (statutory disclosure crucial "because employees are not expected to know instinctively of their right to continue their [group] healthcare coverage."); *Cummings v. Wash. Mut.*, 650 F.3d 1386, 1392 (11th Cir. 2011) (noting COBRA improper notice claim did not accrue until the plaintiff met with lawyer in 2008, as mere expiration of COBRA notification period in 2007, "without more, was insufficient to give Plaintiff reason to know his notification right had been violated").

Defendant also cites *Frances v. Gucci America, Inc.*, 543 F. Supp. 2d 1227 (D. Or. 2008), where a woman worked for a company until 1982, retired, and then requested benefits in 2007. The *Frances* court found the plaintiff knew or should have known of her retirement benefits in 1982, meaning her claim accrued then. *Id.* at 1231. Here, in contrast, Plaintiff did not retire from the workforce until 2015. (Dkt. 18 at 3.) Absent a formal denial of coverage or something akin to the stopping of benefits payment in *Witt* — i.e., an action that clearly repudiated his benefits — Plaintiff's limitations period did not begin.

The complaint contains no allegation to suggest Plaintiff should have known his claim accrued in 2004 such that NCR's failure to pay constituted a clear repudiation. It may be that Defendants can provide evidence of such a repudiation during discovery. After all *Witt* and *Frances* were decided at summary judgment. But, accepting Plaintiff's allegations as true, his claim thus did not accrue until NCR denied his benefits claim in December 2016.[3]

---

[3] Defendants cite *Kolter v. Charming Shoppes, Inc.*, Case No. 11-cv-3296, 2012 U.S. Dist. LEXIS 11577 (S.D. N.Y. Jan. 31, 2012), and *Watkins v. JP Morgan Chase U.S. Benefits Executive*, 570 F. App'x 458 (6th Cir. 2014), as additional examples of a lack of due diligence barring a plaintiff's claims. Both cases are distinguishable. In *Kolter*, the claimant

## B.     Dates of the Relevant Actions

Congress passed ERISA in 1975, and ERISA does not apply to "any cause of action which arose, or any act or omission which occurred, before January 1, 1975."   29 U.S.C.§ 1144(b)(1).   This boundary exists so companies will not be subject to ERISA standards for pre-ERISA choices. *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1501 (9th Cir. 1984) ("ERISA's drafters recognized that it would be unfair to judge pre-ERISA conduct retrospectively by ERISA's standards.").   The parties debate whether the relevant actions took place after 1975, debating chiefly the relevant actions giving rise to the claim.   Defendants say the act was the 1970–1971 leave of absence; Plaintiff says the interpretation of the 1976 plan and the denial of coverage in 2016.

Plaintiff is correct.   In adopting the 1976 Plan, NCR affirmed its willingness to be governed by ERISA and applying the 1976 plan to Plaintiff's claim was an action after 1975.   *See Menhorn* at 1503–04

---

made numerous post-retirement inquiries into his benefits.   2012 U.S. Dist. LEXIS 11577 at *2.   That court reasoned that the company "blockading" his inquiries was evidence of a clear repudiation.   *Id.* at *5. There is no similar allegation here of any defendant "blockading" Plaintiff.   And in *Watkins*, the claimant first sought benefits in 1998 and did not sue until 2010.    570 F. App'x at 460.   NCR denied Plaintiff benefits in December 2016 and Plaintiff sued in June 2017.

("Cases such as the one at bar must be distinguished from those in which benefits have been denied as the result of a significant act of discretion under or interpretation of the plan which took place after ERISA's effective date.  A plan provision requiring discretion does not work to deny an individual benefits until specifically applied to him.").

Defendants cite two cases that found pre-1975 leaves of absence to be pre-1975 actions.  *See Stevens v. Emp'r-Teamsters Joint Council No. 84*, 711 F. Supp. 384 (S.D. Ohio 1989); *Lamontagne v. Pension Plan of the United Wire, Metal & Mach. Pension Fund*, 869 F.2d 153 (S.D. N.Y. 1988).  In those cases, however, the plan providers adopted the plans before 1975.  Put differently, those plan providers did not choose to be governed by ERISA because ERISA was not in effect.

## C.  Failure to Receive Requested Information

ERISA provides that a plaintiff may recover $100 per day for an ERISA plan administrator's failure to provide requested information. *See* 19 U.S.C. § 1132(c)(1)(B).  Plaintiff claims he reached out to NCR Benefits in July 2016, seeking information about the plan.  He says he received no information and argues damages should run from that point. He seeks damages based on several NCR failures to provide information:

14

1. The failure to provide a copy of the summary plan description and/or all modifications or changes at the times and intervals required under 29 U.S.C. § 1024(b)(1) and/or 29 CFR §§ 2520.104b-1, b-2, b-3, b-4;
2. Violating 29 U.S.C. §§ 1022(a) and (b), and accompanying regulations from the U.S. Department of Labor, by purporting to impose provisions that violated the anti-cutback provisions of ERISA and the Internal Revenue Code;
3. Failing to notify them of their right to obtain benefits under the plan;
4. Failing to provide them with a written explanation of their normal form of benefit nine months prior to their earliest optional retirement plan.

(Dkt. 1 ¶ 102.)  Defendants argue Count III should be dismissed because Plaintiff has identified no written request to which Defendants failed to respond.

Some requests for information must be in writing.  *See, e.g.*, § 1025(b)(4) ("The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary.").  But claimants can make other ERISA requests orally.  *See Crotty v. Cook*, 121 F.3d 541, 547 (9th Cir. 1997) ("Because [the administrator] failed to provide summary plan descriptions to [the claimant] after [the claimant] orally requested information about the Plans, [the administrator] violated the plain terms of § 1132(c)."); *Colarusso v. Transcapital Fiscal Sys., Inc.*, 227 F. Supp. 2d 243, 257 (D.

N.J. 2002) ("The Court finds that requests for information described in 29 U.S.C. § 1024(b)(1) do not have to be in writing because the information described in that statute must be provided to participants and beneficiaries automatically upon the occurrence of certain events.").

Plaintiff claims he did not receive information after requesting it. Defendants have not shown that any of those requests had to be in writing.  The Court rejects Defendants' argument.

### D.   Standing

Defendants claim Plaintiff lacks standing under ERISA to bring a benefits claim and breach of fiduciary duty claims.  To have standing, a plaintiff must show an injury-in-fact, causation, and redressability.  *See City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1282 (11th Cir. 2019).  Only a plan participant, beneficiary, or fiduciary may bring a benefits claim under Section 1132(a).  Defendants say Plaintiff was not a Participant, because he did not have ten years of Credited Service with NCR.

The Court disagrees.  According to the complaint, Plaintiff worked at NCR from 1961 until 1980 with an authorized leave from 1970 to 1971. The Plan makes clear that authorized leave does not break Credited

Service.   According to his allegations, Plaintiff has over ten years of experience, making him a Plan Participant.   He thus has standing to bring his benefits claim.

Plaintiff, however, lacks standing to bring his fiduciary duty claims. The Plan is a defined benefits plan.   (Dkt. 1 ¶ 6.)   In a such a plan (as opposed to a defined contribution plan), losses to the plan do not necessarily injure a participant.  *See LaRue v. DeWolff, Boberg & Assoc., Inc.*, 552 U.S. 248, 255 (2008).   That is because participants in a defined benefits plan are entitled to a fixed amount of money.   *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) ("A defined benefit plan . . . consists of a general pool of assets rather than individual dedicated accounts.   Such a plan, 'as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment.' " (quoting *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 153, 154 (1993))).[4]   If a defined benefits plan takes a loss, its participants still

---

[4] In contrast, "[a] defined contribution plan is one where employees and employers may contribute to the plan, and 'the employer's contribution is fixed and the employee receives whatever level of benefits the amount contributed on his behalf will provide.' " *Hughes Aircraft Co. v. Jacobson*, 535 U.S. 432, 439 (1999) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 364 n.5 (1980)).

receive their same benefits (so long as money is available).  *See Lee v. Verizon Commc'ns Inc.*, 954 F. Supp. 2d 486, 497 (N.D. Tex. 2013) ("[A] decrease in the amount of plan assets 'will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan.' " (quoting *LaRue*, 552 U.S. at 255)).  And if the plan becomes underfunded, plan participants still do not necessarily have an injury-in-fact because the plan's sponsors are required to provide additional funding.  *See id.* ("[I]f the fiduciary's conduct results in the plan's becoming underfunded, the plan sponsor is required to make additional contributions."); *see also* 26 U.S.C. § 412(a)(2)(A) (describing employer benefit contributions necessary to reach minimum funding). Losses to the plan only injure a participant if the losses threaten the ability of the plan to continue.  *See Perelman v. Perelman*, 919 F. Supp. 512, 518 (E.D. Pa. 2012) ("Where a defined benefit plan suffers losses, plan participants cannot establish standing to seek money damages where the plan has substantial surplus assets or the plan sponsor is financially capable of making up any losses suffered by the plan.").[5]

---

[5] Even if the fiduciaries cannot fund the plan, and the plan participants are left without money, there still may be no injury-in-fact, as plan participants have a statutory right to funds.  *See David v. Alphin*, 704

Plaintiff has not alleged any threat to the Plan's financial viability. Plaintiff identifies specific transactions that may have caused losses to the Plan. (Dkt. 1 ¶¶ 53–56.) But Plaintiff makes no allegations these losses threaten the ability of the Plan to pay participants. Plaintiff also claims Defendants engaged in acts designed to prevent Plan Participants from learning of their benefits. (*Id.* ¶¶ 82–90, 95, 108–15.) That might cause the Plan to pay surcharges and attorneys' fees. But, again, this does not allege an injury-in-fact to individual Plan Participants. Plaintiff lacks standing for the fiduciary duty claims.

Plaintiff argues ERISA does not require an injury-in-fact for standing. The plaintiffs in *Lee* made a similar argument. 954 F. Supp. 2d at 499. The court denied that argument, finding it "conflates statutory standing with constitutional standing." *Id.* (quoting *David*, 704 F.3d at 338). The Constitution, not ERISA, requires an injury-in-fact for standing. Here, as in *Lee*, Plaintiff "fails to cite any authority holding that there is constitutional standing for [Plan Participants] to sue under

---

F.3d 327, 337 (4th Cir. 2013) (describing how the Pension Benefit Guaranty Corporation will pay participants benefits if an underfunded plan terminates).

ERISA § 409 for a breach of fiduciary duty that causes them no harm." *Id.*

The Court grants Defendants' motion to dismiss Counts II and IV for lack of standing. Plaintiff has not stated he is unwilling to cure the above defects. The Court will allow Plaintiff to file an amended complaint if he believes he has standing under the terms set forth above. *See* FED. R. CIV. P. 15(a)(2) ("[A] party may amend its pleading only with . . . the court's leave."). The Court grants Plaintiff thirty days to do so.

### E.    Modification of the Plan

The Plan requires ten years of Credited Service to be a Participant. Plaintiff worked for the company in two stints, neither lasting ten years. Plaintiff claims the leave in between these stints was authorized, thus giving him the necessary period of service.    The Plan provides that authorized leave does not interrupt Credited Service.[6]   (Dkt. 1 ¶ 33.) Defendants argue Plaintiff got permission for authorized leave in a conversation.    This conversation, they claim, modified the Plan. Since plans cannot be modified orally, Defendants say Plaintiff never had ten

---

[6] The 1976 Plan provided that "Periods of Credited Service before January 1, 1976 credited under the Plan as in effect before that date, shall be credited for the same purposes after that date." (Dkt. 1 ¶ 46.)

years of Credited Service. *Burks v. Am. Cast Iron Pipe Co.*, 212 F.3d 1333, 1338 (11th Cir. 2000) ("ERISA preempts and does not recognize claims based on oral representations that contradict unambiguous written plan terms.").

Plaintiff does not claim the authorized leave conversation modified the Plan. He claims Defendants did not comply with the Plan. (*See* Dkt. 1 ¶ 68 ("The terms of the Plan and ERISA prohibited NCR from divesting the vested benefits of Mr. Stanton and similarly situated class members.").) Specifically, Plaintiff alleges that the leave was authorized, which the plan states will not break up service, and so he would have ten years of Credited Service. This allegation states a claim.

Defendants cite case law that discusses orally modifying a plan. *See Nachwalter v. Chrisite*, 805 F.2d 956 (11th Cir. 1986); *Lister v. Stark*, 890 F.2d 941 (7th Cir. 1989). But, since Plaintiff does not allege the plan's modification, this case law does not apply.[7] Discovery may show that

---

[7] The parties also debate whether it matters if there was an authorized leave or not. Since the Court finds that Plaintiff has stated a claim as for authorized leave, the Court does not discuss whether the leave must have been authorized for Plaintiff to get relief.

Plaintiff is, in fact, relying on some type of oral modification to the Plan. But, accepting his allegations as true, he is not doing so in his complaint.

### F.    Whether Plaintiff Properly Pled Each Defendant

Plaintiff sues the Plan, the Committee, NCR, and six individuals. "The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997). "Administrator" is defined as "the person specifically so designated by the terms of the instrument under which the plan is operated." § 1002(16)(A). There can, however, be a de facto administrator, if an entity possesses or exercises discretionary authority or control over plan administration. *See* 29 U.S.C. § 1002(21)(A); *Rosen*, 979 F.2d 191.

Defendants claim that Plaintiff is suing the wrong individuals and entities, both for the benefits claim and the request-for-information claim.[8] Defendants argue the Committee is the only proper party because each version of the Plan lists it as the Administrator. In response,

---

[8] Defendants argue Plaintiff has sued the wrong entities for his breach of fiduciary duty claims. Since the Court dismisses those counts for lack of standing, the Court does not discuss those claims here. The Court also does not discuss whether the fiduciary duty claims were duplicative of the benefits claim.

Plaintiff, however, has pled facts showing NCR and other Defendants to be de facto administrators.  The complaint states all Defendants except the Plan failed to provide the summary plan description, notify potential plaintiffs of the right to obtain benefits under the plan, and failed to provide plaintiffs with a written explanation of their normal form of benefit.   (Dkt.  1  ¶ 102.)    Plaintiff calls these Defendants "Plan Administrators."   These claims suggest a discretionary authority or control over plan administration such that these parties are proper defendants.   Plaintiff has thus adequately pled facts showing that Defendants had authority to be administrators.[9]  Again, the evidence at summary judgment may show otherwise.

## V.   Conclusion

The Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss (Dkt. 16).  The Court **DENIES** Defendants' Motion to Dismiss Counts I and III.  The Court **GRANTS** Defendants' Motion to Dismiss Counts II and IV for lack of standing.  The Court **DISMISSES** Defendant Ledford from the case.  The Court **GRANTS** Plaintiff thirty

---

[9] Defendant Ledford is only named in Counts II and IV of the Complaint. Since the Court dismisses these two counts, the Court dismisses Defendant Ledford from the lawsuit.

days, up to and including December 18, 2019, to file an amended complaint. The Court **GRANTS** Plaintiff's Motion to Strike the Declaration of Patrick R. Carroll (Dkt. 19) to the extent that the affidavit is admissible for factual attacks upon the Court's subject matter jurisdiction, but not admissible for the 12(b)(6) failure-to-state-a-claim arguments.

**SO ORDERED** this 18th day of November, 2019.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE