# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Arthur Stanton, on behalf of
himself and others similarly
situated,

                Plaintiff,

                            Case No. 1:17-cv-2309-MLB

v.

The NCR Pension Plan, et al.,

                Defendants.

_____/

## OPINION & ORDER

    Plaintiff Arthur Stanton previously worked for NCR Corporation and says he is entitled to benefits under its pension plan. Defendants, who are responsible for that plan, say otherwise. Plaintiff brought this lawsuit claiming Defendants violated ERISA and their fiduciary duties to him and several classes of other similarly situated people. Plaintiff now moves for certification of those classes. (Dkt. 54.) The Court denies that motion. Defendants move to strike Plaintiff's reply brief in support of his motion for class certification. (Dkt. 63.) The Court grants that motion in part and denies it in part.

## I.    Background

NCR first established a retirement benefits plan ("Plan") in 1940. (Dkt. 28 ¶ 14.)  It amended the Plan in 1963, 1969, 1972, 1974, 1976, and 1988.  (*Id.* ¶¶ 16, 26, 31, 39, 41; Dkt. 61 at 14.)  The 1976 Plan provides that "any person who immediately prior to January 1, 1976 was an Employee as defined in the Plan at that time, shall be a Participant." (Dkt. 28-5.)    The 1976 Plan otherwise states that an Employee shall become a Participant on the first of the month next following the date on which he turned 25 and completed one Year of Service.  (*Id.*)  The 1976 Plan states that "if an Employee on December 31, 1975 has 10 or more years of . . .  Credited Service, such an Employee shall be a Vested Participant."  (*Id.*)  The 1976 Plan uses the same definition of "Credited Service as its predecessor's version—"the period of full-time continuous employment by the Company . . . up to the date of the Participant's retirement or other termination of employment." (Dkt. 28 ¶¶ 33, 40, 45.) The 1976 Plan also states that a "Participant shall be a Vested Participant when he has completed 10 or more Years of Service."  (*Id.*)

Plaintiff worked for NCR from 1961 to 1970, when he took a leave of absence for about a year.  (*Id.* ¶ 11.)  He returned in 1971 and worked

until 1980, when he left for other employment.  (*Id.*)  He retired from the workforce in 2015 and sought benefits in 2016, claiming he had 10 years of Credited Service.  (Dkts. 54-1 at 4; 28 ¶ 58.)  NCR denied his claim after determining he had not worked for ten continuous years.  (Dkt. 28 ¶ 59.)  Plaintiff disputes that, saying his year-long absence was authorized and did not break his continued service.  (*Id.* ¶ 47.)

Plaintiff sued the Plan, NCR as the Administrator of the Plan, the Plan's Pension and Benefits Committee, and individuals who either work for NCR in regard to the Plan or serve on the Plan's Pension and Benefits Committee.  He claims (1) NCR and the Plan wrongfully denied Plaintiff's claim for benefits under 29 U.S.C. § 1132(a)(1)(B); (2) Defendants, except the Plan, breached their fiduciary duties under 29 U.S.C. § 1132(a)(3) by representations made to Plaintiff; and (3) Defendants, except for the Plan, violated 29 U.S.C. § 1132(c)(1)(B).[1]  (*Id.* ¶¶ 68–93.)  Plaintiff identifies five Subclasses:

> (a) All Participants in the Plan, including Participants in former employee benefit plans that merged into the Plan, whether active, inactive or retired, and their beneficiaries, surviving spouses, and Estates; who were employed by the Company both before and on or after January 1, 1976; who

---

[1] The Court previously dismissed Count IV and some allegations in Count II.  (Dkt. 41.)

became Participants under the 1976 Plan in accordance with Part II, Section 1, paragraph C of the 1976 Plan; and who did not receive Credited Service, in whole or in part, in accordance with Part II, Section 2, paragraph B of the 1976 Plan because of a pre-ERISA break in their service (collectively, "Subclass A").

(b) All Participants in the Plan, including Participants in former employee plans that merged into the Plan, whether active, inactive or retired, and their Case beneficiaries, surviving spouses, and Estates; who were employed by the Company on or after January 1, 1976; who became Participants in accordance with Part II, Section 1, paragraph A of the 1976 Plan; who had not completed 10 or more Years of Service at the time they terminated employment with NCR; and who did not receive their Basic Monthly Benefit, in whole or in part, upon their Normal Retirement Date in accordance with Part II, Section 2, paragraph A of the 1976 Plan (collectively, "Subclass B").

(c) All members of Subclass A or Subclass B who were not given a copy of the Summary Plan Description for the Plan (collectively, "Subclass C").

(d) All members of Subclass A or Subclass B who were not given notice of their eligibility for benefits under the Plan (collectively, "Subclass "D").

(e) All members of Subclass A or Subclass B who were not given the opportunity to elect and receive a lump-sum distribution of their benefits in 2012 or 2014 (collectively, "Subclass E").

(*Id.* ¶ 66(a)–(e).)  The Court notes that Subclasses C, D, and E depend on the existence of Subclasses A and B.

4

## II.    Motion to Strike

Defendants move to strike (1) Plaintiff's claim for relief under 29 U.S.C. § 1132(c)(1)(A) and (2) Plaintiff's argument about personnel records. (Dkt. 63 ¶ 10.) They contend the claim for relief and argument were raised for the first time in Plaintiff's reply brief in support of his motion for class certification. "[A]rguments raised for the first time in a reply brief are not properly before a reviewing court." *Herring v. Sec'y Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (citation omitted).[2] If the Court denies Defendants' motion, they request leave to file a surreply. (*Id.* ¶ 12.)

### A.    ERISA § 502(c)(1)(A)

Defendants are correct—Plaintiff explicitly mentions relief under ERISA § 502(c)(1)(A) (29 U.S.C. § 1132(c)(1)(A)) for the first time in his reply brief. Before that, Plaintiff's filings about Count III sought relief

---

[2] *See also In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments . . . raised for the first time in the reply brief are deemed waived."); *Oliveiri v. United States*, 717 F. App'x 966, 967 (11th Cir. 2018) (finding claims raised for the first time in a reply brief to be deemed waived); *Cobb v. JPMorgan Chase, LLC*, No. 1:11-CV-2025, 2011 WL 13221045, at *8 (N.D. Ga. Dec. 28, 2011) ("Plaintiff cannot raise new claims for the first time in a response brief, in lieu of seeking leave of court to amend complaint."), *report and recommendation adopted as modified on other grounds*, 2012 WL 13009236 (N.D. Ga. Mar. 30, 2012).

only under ERISA § 502(c)(1)(B) (29 U.S.C. § 1132(c)(1)(B)).   Claims under ERISA § 502(c)(1)(B)—which applies to a plan's failure to provide documents to a participant within thirty days after a request—are different than those under ERISA § 502(c)(1)(A)—which applies to documents that must be provided to participants even without a request. *See Middlebrooks v. St. Coletta of Greater Wash., Inc.*, No. 1:10cv653, 2010 WL 3521760, at *2–3 (E.D. Fa. Sep. 7, 2010) ("Section 502(c)(1)(A) provides the statutory penalty for failure by an administrator automatically to provide notice" of certain rights, assets, and statements whereas "ERISA section 502(c)(1)(B) imposes civil liability on any plan administrator who fails or refuses to comply with a request for any information which such administrator is required by ERISA to furnish to a participant." (internal quotation marks omitted)).

For more than two years, Defendants have relied on Plaintiff's amended complaint to form and prepare their defense.   Defending a 502(c)(1)(A) action is fundamentally different given the lack of a request requirement.   Allowing Plaintiff to add this new claim now would clearly prejudice Defendants. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) (finding arguments raised for the first time in a reply brief preclude

the other party from showing the record does not support the assertions and present an analysis of the legal precedent that "may compel a contrary result"); *Cote v. Countrywide Home Loans*, No. 1:09-CV-0845, 2010 WL 11646975, at *1 (N.D. Ga. Feb. 11, 2010) ("In similar situations, courts have declined to consider such arguments to avoid a scenario of endless surreplies and to avoid promoting the movant's incentive to save her best arguments for her reply brief in order to gain a tactical advantage over the other party."), *report and recommendation adopted*, 2010 WL 11646985 (N.D. Ga. Mar. 31, 2010).

The Court acknowledges its obligation to look at the substance of the complaint, not labels and form.[3]   Doing so supports the Court's conclusion that Plaintiff brought this case to assert claims under ERISA

---

[3] *See Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1253 n.11 (11th Cir.2005) ("We read the complaint as a whole.  In addition, a formulaic misstep by counsel is not fatal under the notice pleading standard (where fair notice is all that is required) of Federal Rule of Civil Procedure 8(a).  [Defendant] cannot say that it did not receive fair notice of the torture claim just because the language about lasting mental trauma was placed in another section of the complaint.") (citing, *inter alia*, 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004) (describing a pleading as judged "by the quality of its substance rather than according to its form or label and, if possible, it will be construed to give effect to all its averments") (internal citations omitted)).

§ 502(c)(1)(B) (29 U.S.C. § 1132(c)(1)(B)) and only turned to the other subsection in the eleventh hour.  In his First Amended Complaint, for example, Plaintiff asserted a claim in Count III under §1132(c)(1)(B). (Dkt. 28 at 31.)  Plaintiff entitled that count: "Claim for Relief Under 29 U.S.C. §1132(c)(1)(B)." (*Id.*)  He then explained that his claim in Count II for breach of fiduciary duty under 29 U.S.C. §1132(a)(3) "may be simultaneously pled with a 29 U.S.C. §1132(c)(1)(B) claim for failure to disclose Plan information." (*Id.* at 89.)[4]  A complaint must "put[] the opposing party on notice of the claims being asserted, and the well-pleaded facts [must] create a plausible claim for relief." *Wallace v. JEY Hosp. Group, LLC*, No. 1:18-81593-CIV, 2019 WL 2269742, at *4 (S.D. Fla. Feb. 1, 2019), *report and recommendation adopted*, 2019 WL 2267191 (Feb. 25, 2019).  Given the allegations in the complaint, Plaintiff cannot reasonably argue it asserted a claim under subsection (c)(1)(A) or notified Defendant of its intention to do so.  Plaintiff's broad reliance on his citation to § 502(c) in his prayer for relief for Count III certainly

---

[4] Beyond the First Amended Complaint, the Joint Report filed by the parties explained that Count III is a claim for relief under § 1132(c)(1)(B)–with no mention of §1132(c)(1)(A).  (Dkt. 52 at 3.)  This also supports the Court's conclusion that Plaintiff intended (until now) to assert a claim only under the former subsection and not the latter.

cannot be said to have provided Defendants' notice of his indication to proceed under § 502(c)(1)(A).[5]  The Court thus strikes Plaintiff's reference in his reply brief to a claim under ERISA § 502(c)(1)(A).

## B.    Personnel Records

Defendants contend Plaintiff's reliance on personnel file records in support of ascertainability should be stricken.  (Dkt. 63-1 at 9.)   In Plaintiff's motion for class certification, he claims the identities of Plan participants and their beneficiaries will be ascertainable "from the records maintained by NCR, and the Committee."  (Dkt. 54-1 at 6–7.) Plaintiff then explains employer's and plan administrator's requirements under ERISA.   (*Id.* at 7.)   Plaintiff concludes his discussion of ascertainability noting that "NCR and the Committee *may* be able to obtain this information from prior Form 5500s filed on behalf of the Plan."  (*Id.* (emphasis added).)  In Plaintiff's reply brief, he states that "the identities of those class members who took the requisite breaks in

---

[5] The Court notes Plaintiff argues his inclusion of Subclasses (d) and (e) should have put Defendants on notice of his intent to seek relief under § 502(c)(1)(B) and § 502(c)(1)(A).  (Dkt. 65 at 8.)  Both § 502(c)(1)(B) and (c)(1)(A), however, relate to the provision of plan documents.  This fact combined with citations to only § 502(c)(1)(B) in Plaintiff's first amended complaint and later pleadings show Defendants were on notice of Plaintiff's claim under § 502(c)(1)(B) only.

service and had the threshold years of service will be ascertainable from their personnel files and/or other records that ERISA required Defendants to maintain." (Dkt. 64 at 3.)  Defendants contend that this "new argument" should be stricken.  The Court disagrees.  In Plaintiff's motion for class certification, he merely speculated that the Plan's Form 5500s may contain the identities of Plan participants and their beneficiaries.  (Dkt. 54-1 at 6–7.)  Plaintiff's reply merely responds to arguments about Form 5500s raised by Defendants in their response brief.  *See Roelle v. Cobb Cnty. Sch. Dist.*, No. 1:13-cv-3045, 2014 WL 4457235, at *9 (N.D. Ga. Sep. 10, 2014) ("If the new arguments raised in a reply brief directly address arguments raised in the non-movant's response, no surreply is warranted.").  Defendants have thus failed to provide a valid reason for striking Plaintiff's discussion of personnel records.

The Federal Rules of Civil Procedure and the Local Rules for the Northern District of Georgia do not allow parties to file surreplies.  *See Stephens v. Trust for Pub. Land*, 475 F.Supp.2d 1299, 1303 (N.D. Ga. 2007) (citing *Fedrick v. Mercedes-Benz USA, LLC*, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005) (declining to permit surreply)).  "To allow such

surreplies as a regular practice would put the court in the position of refereeing an endless volley of briefs." *Garrison v. N.E. Ga. Med. Ctr. Inc.*, 66 F.Supp.2d 1336, 1340 (N.D. Ga. 1999) (declining to permit surreply). "[S]uch filings will typically be accepted by the Court only in unusual circumstances, such as where a movant raises new arguments or facts in a reply brief, or where a party wishes to inform the Court of a new decision or rule implicating the motion under review." *Stephens*, 475 F.Supp.2d at 1303; *cf. Fedrick*, 366 F.Supp.2d at 1197 ("valid reason for . . . additional briefing exists . . . where the movant raises new arguments in its reply brief"). If the new arguments raised in a reply brief directly address arguments raised in the non-movant's response, no surreply is warranted. *Schutz Container Sys., Inc. v. Mauser Corp.*, No. 09-cv-3609, 2012 WL 1073153, at *1 (N.D. Ga. Mar. 28, 2012). That is what happened here, and no surreply is warranted.

## III.   Class Certification

### A.   Legal Standard

"Class representatives bear the burden to establish that their proposed class is 'adequately defined and clearly ascertainable,' and they must satisfy this requirement before the district court can consider

whether the class satisfies the enumerated prerequisites of Rule 23(a)." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) (quoting *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)). "[W]ithout an adequate definition for a proposed class, a district court will be unable to ascertain who belongs in it." *Id.* Administrative feasibility is not required by precedent or the text of Rule 23(a) or 23(b). *See id.* at 1303.

If the plaintiff's proposed class is adequately defined and clearly ascertainable, the plaintiff must then meet the requirements listed in Federal Rule of Civil Procedure 23. *Little*, 691 F.3d at 1304. "A class action may be maintained only when it satisfies all the requirements of [Federal Rule of Civil Procedure 23(a)] and at least one of the alternative requirements of Rule 23(b)." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997). Rule 23(a) requires a plaintiff to demonstrate:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  "Those four requirements are commonly referred to as the prerequisites of numerosity, commonality, typicality, and adequacy of representation, and they are designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (internal quotation marks omitted).

Where Rule 23(a) is satisfied, Rule 23(b) provides that a class action may be maintained only where one of the three following requirements is met:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P 23(b)(1)–(3).

The party seeking class certification has the burden of showing all the requirements under Rule 23 are met.[6]  *Valley Drug Co. v. Geneva*

---

[6] Plaintiff relies on *Lumpkin v. E.I. Du Pont de Nemours & Co.*, 161 F.R.D. 480, 481 (M.D. Ga. 1995) for the argument that he "bears the burden of advancing a prima facie showing that the class action requirements of Rule 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." (quoting *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)).  (Dkt. 54-1 at 5–6.)  Plaintiff fails to disclose that the *Lumpkin* court reviewed the record in the case, which only included the plaintiffs' pleadings and discovery responses as the defendant had provided no discovery responses itself, and determined that awaiting further discovery would only cause needless delay and

*Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," and the merits of a suit may be considered "only to the extent" they pertain to the Rule 23 analysis. *Amgen Inc. v. Conn Retirement Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). The court is nevertheless required to perform a "rigorous analysis" to ensure Rule 23's requirements are satisfied before certifying a class. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). *See also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard.   A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." (emphasis in original)); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008) ("Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence."). "It has long been the law that questions

---

expense. *Id.* The court noted that the record failed "to show any basis for further pursuit of a class action." *Id.* Plaintiff *must* advance a prima facie showing that the Rule 23 requirements are satisfied or set forth a showing that further discovery will substantiate the class action. As discussed herein, Plaintiff has not met his burden.

concerning class certification are left to the sound discretion of the district court." *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1363 (11th Cir. 1984).

## B.   Discussion

### 1.   Ascertainable

As a threshold matter, a plaintiff "must establish that the proposed class is 'adequately defined and clearly ascertainable.'" *Little*, 691 F.3d at 1304 (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)[7]. After the parties completed briefing, the Eleventh Circuit held that "administrative feasibility is not a requirement for certification under Rule 23." *Cherry*, 989 F.3d at 1304. The *Cherry* Court "limit[ed] ascertainability to its traditional scope: a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Id.* There is no dispute here that Plaintiff's proposed class definitions meet the traditional ascertainability rule in that they

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

sufficiently describe a class membership that is "capable of determination."[8]  *Id.*

## 2.   Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  While "mere allegations of numerosity are insufficient," Rule 23(a)(1) imposes a "generally low hurdle."  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009).  "In order to satisfy this requirement, plaintiff need not allege the exact number and identity of the class members, but must only establish that joinder is impracticable through 'some evidence or reasonable estimate of the number of purported class members.' "  *Anderson v. Bank of the S.*, 118 F.R.D. 136, 145 (M.D. Fla. 1987) (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981)); *see Vega*, 564 F.3d at 1267 ("[A] plaintiff . . . bears the burden of making *some* showing, affording the district court the means to make a supported

---

[8] Defendants do not dispute that the subclass definitions contain objective criteria.  (*See* Dkt. 61.)  Instead, their briefing on ascertainability focused on whether class members could be identified in an administratively feasible way.  As noted, however, the Eleventh Circuit recently held administrative feasibility is not a requirement for certification.  *Cherry*, 989 F.3d at 1304.

factual finding, that the class actually certified meets the numerosity requirement." (emphasis in original)).  "[T]he general rule of thumb in the Eleventh Circuit is that 'less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.' " *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).  Further, "[w]hen the exact number of class members cannot be ascertained, the court may make 'common sense assumptions' to support a finding of numerosity." *Susan J. v. Riley*, 254 F.R.D. 439, 458 (M.D. Ala. 2008) (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983)).  Nevertheless, "a plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Vega*, 564 F.3d at 1267.

Plaintiff contends that "discovery is likely to substantiate that the numerosity requirement has been met." (Dkt. 54-1 at 8.)  He relies on two facts: (1) according to the Plan's 2018 Form 5500 "as of December 31, 2018, there were 5,687 retired or separated participants receiving benefits under the Plan; 5,070 other retired or separated participants

entitled to future benefits; and 1,011 deceased participants whose beneficiaries were receiving or were entitled to receive benefits" and (2) "the Plan's records and Form 5500s from between 1969 and 1980, upon information and belief, will show that more than 40 participants or beneficiaries fall within the Class." (*Id.* at 8–9.)

A Form 5500 is an annual report that employee benefit plans (including the Plan) must file with the Department of Treasury. (Dkt. 54-5.) Plaintiff's use of the 2018 Form to identify or estimate the number of class members in Subclass A or B makes little sense. These subclasses are comprised of people who were employed by NCR on or after January 1, 1976 and who were ***denied*** benefits under the Plan—Subclass A comprised of individuals who were denied benefits because of a pre-ERISA break in the time of employment and Subclass B comprised of individuals denied benefits because they had not completed ten or more years of service to the company. Form 5500s, however, disclose the number of active participants, retired participants who are receiving benefits or are eligible to receive future benefits, and deceased participants whose beneficiaries are receiving benefits or are eligible for future benefits. It provides no count of participants who were ***denied***

benefits, let alone any indication as to a number of participants denied benefits for the specific reasons set forth in Subclass A or B.   And even if it did provide this information, Plaintiff's reliance on the 2018 Form 5500 is also erroneous as it spans a period from January 1, 1969 through December 31, 2018.[9]  Subclasses A and B are limited to individuals who participated in the 1976 Plan.  Plaintiff's reliance on the 2018 Form 5500 thus improperly includes participants who were vested and left NCR's employment before January 1, 1976 and participants who began participating in the Plan after it was amended in 1988.  Those employees cannot be class members since they were not part of the 1976 Plan.

Plaintiff's other allegation—that "upon information and belief" the Plan's Form 5500s will show between 1969 and 1980 there were more than 40 participants who fall within the Class—also does not support a finding of numerosity.  As explained above, the form only provides a count of participants and beneficiaries, not those denied benefits.  In addition, Plaintiff relies on Form 5500s between 1969 and 1974, but the

---

[9] The Court acknowledges Defendants contend the 2018 Form 5500 "spans a time period of January 1, 1976 through December 31, 2018," but the Court believes this is a typo. (Dkt. 61 at 14.)  The 2018 Form 5500 clearly states the effective date of the plan is January 1, 1969. (Dkt. 54-5 at 1.)  The difference in this date does not change the Court's analysis.

requirement that ERISA benefit plans file Form 5500s did not exist until ERISA was enacted in 1974. *See* 29 U.S.C. §§ 1023, 1024. Second, a Form 5500 does not identify whether a participant had a break in service or performed ten years of service. A Form 5500 also does not reflect whether an individual relied upon alleged promises regarding benefits— a requirement under Count II—or submitted written requests for Plan documents—a requirement under Count III.[10]

Perhaps Plaintiff references the 2018 Form 5500 simply to show that there are thousands of Plan participants (or beneficiaries) in order to raise a suggestion that there must be enough people in the proposed

---

[10] Plaintiff relies on *Woznicki v. Raydon Corp.*, No. 6:18-cv-2090, 2020 WL 857050 (M.D. Fla. Feb. 20, 2020), *report and recommendation adopted*, 2020 WL 1270223 (Mar. 16, 2020), to argue Defendants' objection that a Form 5500 does not provide the identity of the individuals receiving or not receiving benefits is moot. (Dkt. 62 at 6.) Plaintiff's reliance is misplaced. First of all, the class in *Woznicki* was defined to include plan participants who were vested in the plan and entitled to benefits (and their beneficiaries), not people determined ineligible for benefits as in this case. The Form 5500 thus provided information about the number of class members in *Woznicki*. Second, the court in that case found numerosity satisfied because the defendants argued the class consisted of 109 members but over half of them signed declarations stating they did not want to be involved in the class action. *Id.* at *8. The court found that even if half of the members signed these declarations, that still left more than fifty putative class members. *Id.* The Form 5500s in this case provide no number of alleged class members from which such an assessment could be made.

Subclasses to meet the numerosity requirement.  Maybe Plaintiff means to suggest that, if there are thousands of people who were found eligible, there must be at least 40 people who were denied benefits for the reasons set forth in Subclasses A and B.  (Dkt. 54-1 at 9, n.3.)     And, while not discussed in the parties' briefing, Defendants stated during a hearing that there could be well over 100,000 employees who worked at NCR from 1961 to 1975.  (February 4, 2021, Hearing Transcript ("Feb. 4th Tr.") at 17.)  Evidence that a lot of people worked for NCR or were determined eligible for benefits is insufficient to establish numerosity.  While a "court may make common sense assumptions to support a finding of numerosity," *Riley*, 254 F.R.D. at 458 (internal quotation marks omitted), "a plaintiff still bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement."  *Vega*, 564 F.3d at 1267 (emphasis in original).

Several courts have rejected the argument that, just because a plaintiff shows a defendant's actions might possibly have impacted a large number of people, a court can assume enough people were actually impacted so as to satisfy the numerosity requirement.  In *Susan J. v.*

*Riley*, for example, the plaintiffs sought certification of a class of people who applied for waiver services under Alabama's Home and Community Based Waiver program but did not receive those services within a reasonable time. 254 F.R.D. at 445. The plaintiffs argued numerosity was met because there were more than 1,600 people on the waiting list when they filed suit. *Id.* at 458. The court rejected that argument, noting the plaintiffs failed to present any evidence showing how many open waiver slots existed or how many individuals on the waiting list had been denied an open slot. *Id.* The court recognized its authority to estimate the size of the case through common sense assumptions but concluded the plaintiffs had not provided enough information as a jumping off point for such an assumption. *Id.*

Similarly, in *Vega*, a former T-Mobile retail sales representative sought certification of a nationwide class of company employees who— like him—had received commission from T-Mobile upon the sale of prepaid phone plans but later had those commissions charged back to them by the company. 564 F.3d at 1263. The plaintiff produced evidence that T-Mobile had employed thousands of associates nationwide over the relevant period. *Id.* at 1267. It also showed that the charge back was

part of a company-wide compensation policy. *Id.* The district court denied a nationwide class but certified a class of Florida employees. *Id.* at 1266–67. The Eleventh Circuit reversed, finding insufficient evidence of numerosity. *Id.* at 1267–68. The court explained that, although there was evidence from which a court could find numerosity for a nationwide class, "[the plaintiff] ha[d] not cited, and [it] cannot locate in the record, any evidence whatsoever . . . of the number of retail sales associates T-Mobile employed during the class period *in Florida* who would comprise the membership of the class, as certified by the district court." *Id.* at 1267 (emphasis in original). The Court of Appeals noted that "T-Mobile is a large company, with many retail outlets, and, as such, it might be tempting to assume that the number of retail sales associates the company employed in Florida during the relevant period can overcome the generally low hurdle presented by Rule 23(a)(1)." *Id.* But, a district court's findings and inferences of numerosity must "find support in the evidence before it." *Id.* A district court cannot extrapolate beyond the evidence. The Eleventh Circuit concluded "the district court's inference of numerosity for a Florida-only class without the aid of a shred of Florida-only evidence was an exercise in sheer speculation." *Id.*

Finally, in *Hunter v. Cook*, No. 1:08-CV-1930, 2012 WL 12831938, at *2–3 (N.D. Ga. Aug. 2, 2012), the plaintiffs sought to certify a class of Medicaid-eligible Georgia residents under the age of 21 whose Medicaid services had been or would be denied, delayed, reduced, or terminated by application of policies and practices of the Georgia Pediatric Program ("GAPP").   The plaintiffs offered testimony that more than 500 individuals received private-duty nursing services through GAPP and thus could have had their benefits reduced or eliminated.  *Hunter*, 2012 WL 12831938, at *4.  The plaintiffs, however, produced no evidence as to the number of individuals who actually had their benefits altered under GAPP policies.  *Id.*  Without that evidence, the Court concluded the plaintiff had failed to show numerosity.  The Court concluded that, while it might be tempting to assume some percentage of the 500 potential class might have their benefits reduced by GAPP, the law did not permit it to do so.  *Id.*

Here, Defendants stated that there could be well over 100,000 employees who worked at NCR from 1961 to 1975.  (Feb. 4th Tr. at 17.) And Plaintiff has shown that in 2018 over 13,000 people were receiving benefits or were eligible for future benefits.  Plaintiff, however, has not

produced any evidence as to the number of individuals who were deemed ineligible for benefits because of a break in service or because they had not completed 10 or more years of service.  The proposed classes do not consist of *all* employees who worked at NCR from 1961 to 1975.  They do not include those who were found eligible for benefits.  Subclasses A and B include only those employees who were (1) Participants in the 1976 Plan and (2) deemed ineligible for benefits because of a break in service or as a result of not having completed 10 or more years of service.  Plaintiff has offered no evidence indicating how large these classes of individuals might be.  Although possibly tempting to assume some percentage of these employees must have been part of the requisite plan and must have been denied benefits because of a break in service or because they had not completed 10 or more years of service, "a plaintiff still bears the burden of establishing every element of Rule 23." *Vega*, 564 F.3d at 1267.  As *Hunter*, *Riley*, and *Vega* demonstrate, a large population of possible class members may be a good first step in the numerosity analysis, but it is not enough absent additional evidence showing how many people are likely in the class.  Plaintiff asks the Court to make, not a common sense assumption from the evidence before it as

the law allows, but rather "an act of sheer speculation" prohibited by law. *Id.* The Court notes Plaintiff also alleged in his complaint that "[t]he number of members of the appropriate Subclass is believed to be approximately 500 or more." (Dkt. 28 at 21.) There is nothing more to this allegation, however, than speculation. Plaintiff provides no evidence to substantiate his claim that each Subclass will have 500 or more members. For this reason, Plaintiff has failed to establish numerosity under Rule 23 for Subclasses A and B. *See Siles v. ILGWU Nat'l Retirement Fund*, 783 F.2d 923, 930 (9th Cir. 1986) ("[The plaintiff's] only evidence of numerosity was that 31,000 employees covered by the plan lost their jobs in 1974 and 1975.").[11]

---

[11] In Plaintiff's reply brief, he reiterates the conclusory statement that discovery likely will substantiate that the numerosity requirement has been met. (Dkt. 62 at 6.) He cites *Evans* for the arguments that the Court may "make common sense assumptions to find support for numerosity" and "where the numerosity question is a close one, a balance should be struck in favor of finding numerosity." The Court notes that while it is true courts can make common sense assumptions to support a finding of numerosity, that proposition is not quoted in *Evans*. *See Zeidman*, 651 F.2d at 1039 ("[F]ederal trial courts are quite willing to accept common sense assumptions in order to support a finding of numerosity." (internal quotation omitted)). In any event, there are no common sense assumptions to make. Plaintiff has made no plausible showing that numerosity is met. And numerosity is not a close question as there is no evidence of numerosity. Plaintiff also relies on *Cox* for the

Plaintiff has also failed to establish numerosity for Subclasses C, D, and E.  These classes are predicated on whether someone is a member of Subclass A or B, thus posing the same numerosity concerns identified above.  But, in addition, membership in these classes also depends on whether individuals received Summary Plan Descriptions, were given notice of eligibility for benefits, or were given an opportunity to elect and receive a lump-sum distribution of benefits.  (Dkt. 28 ¶¶ 66(c)-(e).)  To be a member of one of these subclasses, an individual must have received some information or notice and Plaintiff has presented absolutely no evidence as to the number of people who did so.  Plaintiff does not even directly address these subclasses.  He has thus failed to establish that they include so many individuals as to make joinder impracticable.

The Court need not address the remaining requisites for certification under Rule 23.  *See Jackson*, 130 F.3d at 1005 ("A class

---

proposition that an estimate of more than forty class members satisfies the numerosity requirement.  Plaintiff's reliance is misplaced.  The Eleventh Circuit in *Cox* held that the district court abused its discretion in decertifying a class because the trial court authorized an opt-out notice at the certification stage of the suit which is not the practice of the circuit, the content of the opt-out notice was improper, and the district judge cavalierly imposed the harshest Rule 37 sanction against passive class members.  *Cox*, 784 F.2d at 1553–56.  Those facts are not present.

action may be maintained only when it satisfies all the requirements of [Federal Rule of Civil Procedure 23(a)] and at least one of the alternative requirements of Rule 23(b).")

## IV.   Conclusion

The Court **DENIES** Plaintiff's Motion for Class Certification (Dkt. 54) and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Strike (Dkt. 63).

**SO ORDERED** this 29th day of March, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE